Submitted November 27, 2013, affirmed September 24, 2014

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## WILLIAM BRADFORD PURRIER,
*Defendant-Appellant.*

Washington County Circuit Court
D115538M; A150749

336 P3d 574

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Hadlock, Judge, and Schuman, Senior Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant, who was convicted of two counts of harassment following a jury trial, asserts that the trial court erred when it overruled his objection to statements made by the prosecutor in closing argument. He contends that the prosecutor's statements had the effect of impermissibly misleading the jury about the applicable burden of proof in the case. We affirm.

The facts are not in dispute. The state charged defendant with one count of fourth-degree assault, ORS 163.160, and two counts of harassment, ORS 166.065. The charges stemmed from allegations that defendant had punched the victim, his wife, on two separate occasions. At trial, the defense theory was that the victim had fabricated the allegations in order to obtain a restraining order against defendant that would allow her to pursue—unfettered by defendant's presence—her romantic interest in another man, Dupree. Defendant did not call any witnesses or otherwise put on a case. In closing argument, his attorney attacked the credibility of both the victim and Dupree, whose testimony tended to corroborate the victim's account. In a summation of the defense theory, defense counsel asked the jury, "And how did she get that Restraining Order? She had to get that Restraining Order by taking what was in reality a verbal argument, and transforming it into a crime."

During rebuttal argument, the prosecutor stated:

"So, in a way, what you're doing, really, is it's much like a 'he said/she said.' We happened to have another person there, but it's still the same way. *You have to believe one story or the other. Two stories to choose from. And you have to decide which one actually makes sense.* Which one do the puzzle pieces point go? [*sic*]."

(Emphasis added.)

At that point, defense counsel objected, contending that the prosecutor had—through the emphasized language above—improperly characterized the state's burden of proof. The trial court overruled the objection. The prosecutor continued with closing argument, again asserting that the jurors would "get to decide which story [they] believe," and

the jury subsequently convicted defendant of the harassment charges and acquitted him of the assault charge.

On appeal, defendant reiterates the points he made below, advancing a two-part argument for reversal. First, defendant argues that the prosecutor misstated the law during her rebuttal argument. Pointing to decisions from other jurisdictions, he maintains that the prosecutor's statements about the parties' competing "stories" impermissibly suggested that the jury could find defendant guilty based solely on a determination that the state's witnesses were credible, as opposed to being able to convict only if the state proved beyond a reasonable doubt that defendant had committed the charged offenses. That argument presents a question that we review for legal error. *See State v. Worth*, 231 Or App 69, 75-76, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (applying that standard of review to a defendant's argument that a prosecutor misstated the law during closing argument).

Second, defendant argues that he was prejudiced by the trial court's failure to recognize the prosecutor's misstatement of the law and sustain his objection to it. Specifically, defendant contends that the prosecutor's statements "likely misled the jury," resulting in an unfair trial. Accordingly, defendant concludes, we should reverse his convictions because the trial court's "failure to recognize that the prosecutor misstated the law was harmful." Our assessment of that argument is guided by a single question: "Is there little likelihood that the [asserted] error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (articulating the "single inquiry" that constitutes "Oregon's constitutional test for affirmance despite error").

We start by addressing the propriety of the prosecutor's rebuttal argument. "The law presumes every defendant upon trial charged with crime to be innocent, and it devolves upon the prosecution to prove by evidence to the satisfaction of the trial jury, beyond a reasonable doubt, that the defendant committed the crime charged * * *." *State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922). In arguing that it has met that burden, the state permissibly may attempt to persuade the jury that it should believe one version of events and not another. *See State v. Brown*, 306 Or 599, 604, 761 P2d

1300 (1988) ("[I]t is the jury's task * * * to weigh evidence, judge the credibility of witnesses and the reliability of their testimony, and to resolve conflicts in the evidence."); *State v. Monsebroten*, 106 Or App 761, 766, 809 P2d 1366, *rev den*, 311 Or 482 (1991) (prosecutor's comment in rebuttal argument, explaining the lack of evidence to support "a number of speculations" that defense counsel made about the victim's testimony during the defendant's closing argument, "did not imply that defendant had the burden to prove anything, only that the state had met its burden of proof and that there was no contradictory evidence"). However, in making that kind of argument, the state must not inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof. *Covington v. Florida*, 842 So 2d 170 (Fla Dist Ct App 2003), cited by defendant, makes that point. *See id.* at 172-73 (prosecutor improperly invited the jury to convict by telling the jury, "If you believe he did not tell you the truth, that he made up a story, that's it, he's guilty of First Degree Murder" and, "If you believe his story, he's not guilty. If you believe he's lying to you, he's guilty. It's that simple." (Emphasis omitted.)).

In this case, the specific part of the prosecutor's rebuttal argument to which defendant objected came close to crossing the line between permissible argument about the jury's need to assess the witnesses' credibility, in conjunction with assessing whether the state proved defendant's guilt beyond a reasonable doubt, and incorrectly describing the jury's task as choosing which of two versions of events the jury finds more believable (a description that omits the possibility, among others, that the jury would find the state's version more plausible, yet not be convinced beyond a reasonable doubt of defendant's guilt). However, we need not determine in the abstract whether the prosecutor's statements—standing alone—actually crossed that line, as the prosecutor did not make those statements in a vacuum. As we explain below, considered in context, the challenged statements would not have misled the jury about the state's burden to prove defendant's guilt beyond a reasonable doubt. Accordingly, if the trial court erred in overruling defendant's objection to those statements, the error was harmless.

First, the trial court repeatedly instructed the jury—at the beginning of the trial, at the conclusion of evidence, and at least four times in total—that the state had the burden to prove that defendant was guilty beyond a reasonable doubt.[1] "The jury is presumed to follow the court's instructions, 'absent an overwhelming probability that they would be unable to do so.'" *State v. Middleton*, 256 Or App 173, 300 P3d 228, *rev den*, 354 Or 62 (2013) (quoting *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990)).

Second, the context in which the prosecutor made the challenged statements is significant. Defendant does not contend that the prosecutor mischaracterized the law in any way during her initial closing argument. To the contrary, after discussing the evidence presented at trial, the prosecutor reiterated the state's burden of proof, telling the jury that it was "going to be asked to look at all this evidence and make a decision about what you believe occurred, beyond a reasonable doubt." The prosecutor made the challenged statements only later, in her rebuttal argument, after defense counsel suggested during her own closing argument that the victim was an "over-the-top exaggerator" whose claim that defendant assaulted her was motivated by her desire to get a restraining order that would give her freedom to pursue a relationship with Dupree. In our view, it is unlikely that the jury would have understood the prosecutor's subsequent statements about the parties' competing "stories" as anything other than advocacy about how the jury should assess the credibility of the witnesses, including the victim.

Put differently, defendant has shown neither that the jurors would have understood the prosecutor's statements as suggesting that they could convict defendant even

---

[1] For example, the trial court's final instructions stated:

"The defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt. The burden is on the State to prove the guilt of the defendant beyond a reasonable doubt.

"Reasonable doubt is doubt based on common sense and reason. Reasonable doubt means an honest uncertainty as to the guilt of the defendant. Reasonable doubt exists when, after careful and impartial consideration of all the evidence in the case, you are not convinced that the defendant is guilty."

if they were not persuaded beyond a reasonable doubt of his guilt, nor an "overwhelming probability" that the jurors would have followed any such suggestion, disregarding the trial court's repeated instructions about the state's burden of proof. In short, we conclude that, even if the trial court erred in overruling defendant's objection to the prosecutor's statements, there is no likelihood that the error affected the jury's verdict.

Affirmed.